## BEACH *against* MILLS :

### IN ERROR.

Book debt will not lie for the use and occupation of real estate.

This was an action of debt on book, in common form. During the pendency of the cause in the county court, after issue joined on the plea of *owe nothing, Calvin Butler*, Esq. was, by

agreement of the parties, appointed sole auditor to adjust and liquidate their accounts. On the hearing before him, the account exhibited by the plaintiff, was as follows :

" *Simeon Beach* to *Lydia Mills* in acc't—Dr.

| | |
|---|---|
| To the use of my land in *Cornwall*, from *August*, 1817, to *January*, 1818, | $2. 25 |
| To use of do. from *January*, 1818, to *January*, 1819, | 15. 00 |
| To use of do. from *January*, 1819, to *January*, 1820, | 15. 00 |
| To use of do. from *January*, 1820, to *January*, 1821, | 15. 00 |
| To use of do. from *January*, 1821, to *January*, 1822, | 15. 00 |
| | $62. 25" |

In support of this account, the plaintiff offered herself, with several other witnesses, to prove, that the defendant used and occupied the land, during the years 1817 and 1818, under an express agreement between him and the plaintiff, and for the residue of the term charged in the account, by permission of the plaintiff, without any express agreement, on his part, to hire it, or to pay for the rent thereof. The plaintiff also offered the testimony of the same witnesses to prove what the rent of the land was worth, during the several years specified in the account. To the admission of the whole of this testimony the defendant objected, on the ground that the charges were not a proper subject of book debt. The auditor received the testimony, and reported a balance due on book from the defendant to the plaintiff of 23 dollars, 11 cents. The defendant remonstrated against the acceptance of the report, stating in his remonstrance the foregoing facts ; to which the plaintiff demurred. The county court accepted the report, and rendered judgment for the balance due. The defendant thereupon brought a writ of error in the superior court ; which was reserved for the advice of this Court

*J. W. Huntington*, for the plaintiff in error, contended, That an action of book debt would not lie to recover rent reserved on a parol lease, or for the use and occupation of real estate.

First, there is no precedent for such an action. The instances are innumerable in which such actions would have been brought, had it been supposed they could be maintained ; and an universal silence, on a subject which so frequently gives reason for litigation, is a strong argument to prove, that no such action can be maintained. Per *Buller*, J. *Doug.* 580. The advantages of the plaintiff's oath would be considered too im-

portant to be overlooked, had it been supposed he could have the benefit of it. On the contrary, all the precedents are of the action of *assumpsit* for rent. *Gunn* v. *Scovil*, 4 *Day* 228. *Gunn* v. *Scovil*, 5 *Day* 113. *Vandenheuvel* v. *Storrs*, 3 *Conn. Rep.* 203.

Secondly, there is no *necessity* for resorting to this action. The statute on which it is founded, introduces a principle not only unknown, but opposed, to the common law. It opens a wide door for perjury. The court will not, therefore, extend it beyond those cases, in which the spirit and object of the law require it. The reason of the introduction into our law of this anomalous principle, was pure necessity. It arose from a supposed failure of justice without it. In the ordinary intercourse between man and man, it was not to be expected that witnesses would be present; and their transactions could be verified only by the book, or loose pieces of paper, on which they were entered, and the oath of the party. But the use and occupation of real estate is a matter public, notorious and capable of common law proof.

Thirdly, it is not *usual* and *customary* to charge rent of land on book But the cases in which the evidence of the parties is to be received, are those only where the charges are usually made on book. *Swift's Ev.* 81. 83.

Fourthly, if the present action is sustainable, the action of book debt, so far as the nature of the article charged is a criterion, will be concurrent, in *all* cases, with *assumpsit*. There is, in this respect, no resting-place. If it will lie for the use of land, it will lie for every thing that can be named. Are the Court prepared to go this length? Will the Court, without a precedent, without necessity, and without the existence of the cause which led to this action, sustain it in all cases where *assumpsit* would lie, when there are so many strong and operative reasons why it should not be extended?

*P. Miner*, for the defendant in error, insisted, That the remedy, in this case, was not misconceived. He observed,

First, that no inference against this form of action could be made from the mere want of litigation on the subject. This may be accounted for, on the ground that no one ever doubted the propriety of the action. The fact that there is no decision upon the point, reported or recollected, does not prove, that book debt has not been frequently brought, in cases like the present, and passed into judgment *sub silentio*. But if it had

been seldom, or never before, resorted to, it does not necessarily follow, that there has been a general impression against its propriety. The plaintiff may not have had occasion to rely upon his own oath; and he may have preferred a form of action, which would exclude the defendant's; for it is to be kept in mind, that if book debt proffers to the plaintiff the advantage of his own oath, it subjects him, at the same time, to the disadvantage of being encountered by the defendant's.

Secondly, no more danger of perjury results from the action of book debt, in this case, than in any other; and if it be true, as the counsel for the plaintiff in error has suggested, that the use and occupation of land may be always proved by disinterested witnesses, there is *less* danger; for there is obviously less temptation, and greater exposure to detection.

Thirdly, the right of the party to bring this action does not depend on its *necessity.* In many, and indeed in most, well regulated states, our action of book debt is unknown. Our legislature has thought proper to introduce it here; and has not limited it to cases in which it is necessary. Our statute of book debt, like the stat. 11 *Geo.* 2. *c* 19. *s.* 14. is obviously founded on the broad principle of *convenience,*—not on the ground of necessity.

Fourthly, it is well settled, that book debt will lie in many cases, which are analogous to the present case, and which *in principle* govern it;—*e. g.* the pasturage of cattle; the use of a saw-mill, fulling-mill, carding-machine; the storage of goods; betterments made on land, &c. *Minor v. Erving's* exrs. *Kirby* 158. What difference is there in principle between a charge on book for the *pasturage* of cattle, and one for the *use of the pasture* for the cattle?

BRAINARD, J. The question in this case is, whether an action on book will lie for the rent of land. This action on book is founded in a kind of moral necessity. The whole civilized and commercial world has, in substance, the same thing. The principles of it, I believe, were introduced into this country from *Holland,* by the first settlers of *New-England*; and the practical form of the action, and principles necessarily attendant on it, were early adopted, by the legislature of *Connecticut.* Its origin, doubtless, was in commercial transactions; but its use became necessary in the common intercourse of life between man and man. That in this common and necessary intercourse between man and man, there should always be wit-

nesses either of the delivery or payment of an article, could not be expected. Hence a mutual confidence and an interchange of recollection became necessary to furnish testimony founded on means of knowledge common to both. But this action on book ought not to be extended beyond its necessity. The use and occupation of land are obvious. A man claims title. To prove it, he produces his deed, or other evidence; and whether another has, or has not, occupied it, ought not to depend on the testimony of either. The necessity ceases; for the fact, if it existed, must have been obvious.

The appropriate action for use and occupation of land, is *assumpsit*; and whether this would or would not lie, unless upon a special promise; and whether the statute of 11 *Geo. 2.* was necessary to give the remedy; are questions, which it is not now necessary to discuss. We have rationally decided, that for the use and occupation of real estate, with the permission of the owner, *assumpsit* will lie.

I am of opinion that there is error in the judgment of the county court.

HOSMER, Ch. J. was of the same opinion.

PETERS and BRISTOL, Js. dissented.

Judgment to be reversed.